# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| *IN RE*: | Case No. 20-51066-mar |
| | Chapter 11 |
| HFV LIQUIDATING TRUST, | Hon. Mark A. Randon |
| Debtor. | |
| SHELDON STONE, as Trustee for the | Adv. No. 22-04094 |
| HFV LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | |
| LIFE CARE SERVICES, LLC, and | |
| BRUCE BLALOCK, | |
| Defendants. | |

**RESPONSE IN *OPPOSITION* TO PLAINTIFF'S MOTION TO COMPEL**

**STATEMENT OF QUESTIONS PRESENTED**

1.      Should the Court deny Plaintiff's Motion since Plaintiff fails to discharge its burden of proof that the discovery requests are properly directed at Defendants, since the requested documents should have been preserved *by Plaintiff* under the plain language of Mich. Comp. Laws § 554.949, and the plain meaning of §§ 323, 704, and 1106 of the Code, made binding on this Plaintiff through the First Amended Chapter 11 Liquidating Plan of Debtor (Doc No. 651 at pp. 123-125 and 129-131 of 201, in lead case no. 20-51066) at §§ 4.2, 4.3, and 4.9?

Defendants answer: "Yes."

2.      Should the Court deny Plaintiff's Motion since it is demonstrably false, and Defendants are the only parties to have produced any documents, now exceeding more than One Million pages of directly relevant materials?

Defendants answer: "Yes."

3.      Should the Court deny Plaintiff's Motion since Plaintiff failed to discharge its burden of proof that the discovery requests were valid, or proper, and were not objectionable, and that the objections made are not sound?

Defendants answer: "Yes."

4.      Should the Court grant Defendants costs and fees for defending against Plaintiff's meritless Motion?

Defendants answer: "Yes."

5.      Should the Court order Plaintiff to provide real discovery responses and documents to Defendants since Plaintiff's objections to Defendants' discovery that were made at the same time lack merit and specificity?

Defendants answer: "Yes."

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Federal Rule of Civil Procedure 26(b)(1) (as applicable through Bankruptcy Rules)

Rule 37(a)(1)(B) (as applicable through Bankruptcy Rules)

*Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021)

*Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015)

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

*Gruenbaum v. Werner Enterprises, Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)

*White v. City of Cleveland*, 417 F. Supp.3d 896, 902 (N.D. Ohio Oct. 25, 2019)

# I. Introduction.

Defendants Life Care Services, LLC ("LCS") and Bruce Blalock ("Blalock" and collectively, "Defendants") oppose the Motion to Compel filed by the Plaintiff, the Liquidating Trustee, Sheldon Stone. As detailed below, Plaintiff's Motion should be denied for at least three reasons.

First, the discovery requests at issue are not properly directed at Defendants. In simple terms, the requests at issue pertain to the "finances" of the debtor, Henry Ford Village, Inc. (the "Debtor"). Plaintiff itself should have the documents it evidently wants. The requested documents should have been preserved *by Plaintiff* under the plain language of Mich. Comp. Laws § 554.949, and the plain meaning of §§ 323, 704, and 1106 of the Code, made binding on this Plaintiff through confirmed plan sections 4.2, 4.3, and 4.9 of the First Amended Chapter 11 Liquidating Plan of Debtor (Doc No. 651 at pp. 123-125 and 129-131 of 201).

Second, the Court should deny Plaintiff's Motion since it is demonstrably false. Defendants are the only parties to have produced any documents. Defendants have produced more than 1.3 Million pages of discovery including detailed "financial" documents going to the heart of this case. A small *sampling* of just a flavor of those documents are detailed below and attached as exhibits. The documents prove this case is meritless—a predictable waste of estate resources that further reduce the pennies on the dollar distributions to unsecured creditors (for

which LCS, ironically, is *by far* the largest) while Plaintiff and its professional continue to endlessly charge professional fees.

Third, the Court should deny Plaintiff's Motion since Plaintiff failed to discharge its burden of proof that the discovery requests were valid, or proper, and were not objectionable. Plaintiff's Motion is meritless because Plaintiff never took time to write quality discovery requests. Plaintiff's discovery requests were vague, compound, and lacked the definition and clarity needed to provide clear answers. The objections were stated in clear, precise terms. Instead of rephrasing the requests or clarifying what Plaintiff actually seeks, or why what Plaintiff seeks is relevant, Plaintiff elected to spend more estate funds by filing the Motion. In contrast to Plaintiff's objections, Defendants' objections are well-written, sharp, and correct. Plaintiff makes no attempt to actually analyze or show anything improper in Defendants' objections because there is nothing incorrect or improper in them. Plaintiff fails in his burden; the Motion should be denied.

Plaintiff's failure to discharge its burden is all the more relevant here where Defendant (for efficiency only) is searching and try to locate in its records the "financial" documents that Plaintiff allegedly seeks but fails to unearth despite its own control and custody over the Debtor's records. Defendants should be awarded costs and fees and Plaintiff should be ordered to produce documents actually

- 2 -

responsive to Defendants' requests and Plaintiff's imprecise and boilerplate objections should be overruled.

This request is appropriate because it is Plaintiff who has lodged acontextual and unexplained objections that are boilerplate and should be overruled. Likewise, Plaintiff's reference to its "prior motion" is downright frivolous. Plaintiff alludes to the idea that somehow that means that Defendants are recalcitrant in discovery. That's simply not true, if ironic. Defendants have produced over One Million Three Hundred Forty-Three Thousand Seven Hundred Forty-Four (1,343,744) pages of documents. The only reason Plaintiff withdrew its prior motion is because it was clearly not going to prevail at the hearing.

Plaintiff has not produced a thing other than documents from *public auditors*. Both discovery from Defendants and the auditors *confirm* Debtor's Board of Directors was *constantly* aware and apprised of Debtor's deteriorating financial condition leading up to and following the onset of the pandemic. Those documents prove false the core claim in this case alleged by Plaintiff that Defendants' "fail[ed] to appropriately disclose to the HFV Board the severe and growing financial distress of HFV." See ECF No. ECF No. 1 at p. 18 at ¶ 48(e). This is also why it is unsurprising that interviews by Defendants of the former Directors of the Debtor all confirm Plaintiff's entire claim is legally and factually false at its base.

In fact, it is counsel for the Plaintiff who is constantly moving deposition dates for the Trustee. That is *the reason* this case has and continues to languish. The Court should enter and Order directing the parties to complete discovery within the next 60 days, including taking depositions later this summer, and then setting a fresh deadline for summary judgment and, if Plaintiff's case survives, trial.

## II. Statement of Facts.

### A. Plaintiff's Requests and Objections.

Plaintiff's description of the May 9, 2023 discovery is inaccurate because Plaintiff fails to even state, much less contest, the objections Defendants then registered. Plaintiff fails to make an effort to argue against the objections because there is no successful argument Plaintiff could make.

One of the few true statements Plaintiff makes is that Plaintiff did issue broad requests for documents "concerning the finances and operations" of Henry Ford Village. Plaintiff cites to LCS RFP No. 4/Blalock RFP No. 5. See ECF No. 122, at 1-2. Plaintiff also requested "[a]ll documents and communications concerning LCS's 'monitoring and reporting' of the financial and operational performance of the Community, including any analysis or recommendations from LCS on how to improve such performance." *Id.* LCS RFP No. 5/Blalock RFP No. 6.

Again, Defendant objected, and Plaintiff failed to contest those objections. See ECF Nos. 56-4, 56-5, 56-6, 56-7 (as discussed in part in greater detail below).

- 4 -

There was nothing contestable about them. Further, Plaintiff now does not attempt to argue against the objections. This failure by Plaintiff extends to the "detailed" letter Plaintiff attempts to describe as a "meet and confer" letter. As evidence of the fact, the letter is not detailed in the least. ECF No. 122-3. It does not attempt to contest even one objection—the very purpose of the meet and confer process. *Id.*

## B. Defendants Produced Millions of Pages.

Defendants, despite their valid objections, Defendants produced over 1.3 million pages of written discovery. A small sample of some of the produced documents, to give the Court an idea of what those consist of, are attached as **Exhibits 1-59.** These were basic "financial" and "operational" documents correlating to LCS RFP Nos. 4 and 5 and Blalock RFP Nos. 5 and 6 (see ECF No. 122, at 1-2), as follows:

1. For example, LCS has produced the August 24, 2016 financial package to HFV Directors Ron Jesmore, John Byrne, Curt Yun. This document shows among other data:

    a. Year to date operating revenue;

    b. Year to date operating expenses;

    c. Year to date net operating income;

    d. Year to date net non-operating income;

    e. Year to date net income;

f.  Monthly trends by segment;

g.  Amortization;

h.  Interest;

i.  Depreciation;

j.  A detailed breakout of the budget by line item expense; and

k.  Balance sheet.

2.  The September 21, 2016 financial package to HFV Directors Ron Jesmore, John Byrne, Curt Yun, again showing similar details.

3.  Delivery of April 2016 Financial Package to HFV Directors Ron Jesmore, John Byrne, Curt Yun.

4.  April 2016 Financial Package.

5.  Delivery of January 2016 Financial Package to HFV Directors Ron Jesmore, John Byrne, Curt Yun.

6.  January 2016 Financial Package.

7.  Correspondence on refinance of secured debt efforts to HFV Directors Ron Jesmore, John Byrne, Curt Yun.

8.  October 2015 Board of Directors Minutes to all HFV Directors.

9.  May 2017 Report of sales and year to date financial performance (known as "dashboard" report) to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

- 6 -

10.    April 2017 Financial Report.

11.    June 2017 "dashboard" report.

12.    September 2016 "dashboard" report email transmission to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

13.    September 2016 "dashboard" report.

14.    August 30, 2016, refinance and "cash watch" correspondence to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

15.    October 2016 "dashboard" report email transmission to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

16.    October 2016 "dashboard" report.

17.    Additional October 2016 "dashboard" report email transmission to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

18.    Additional October 2016 "dashboard" report.

19.    October 19, 2016 "financial retreat" report email transmission to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

20.    October 19, 2016 "financial retreat" report.

21.    October 19, 2016 "cash planning and forecast" report email transmission to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

22. October 19, 2016 "cash planning and forecast" report (produced as native .xls file and therefore not included but can be delivered).

23. October 19, 2016, "52 week cash flow" report.

24. Additional October 26, 2016 "dashboard" report email transmission to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

25. Additional October 26, 2016 "dashboard" report.

26. December 9, 2016 "cash planning and forecast" report email transmission to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

27. December 9, 2016 "cash planning and forecast" report (produced as native .xls file and therefore not included but can be delivered)

28. December 5, 2016, "52 week cash flow" report.

29. Delivery of December 2016 Financial Package to HFV Directors Ron Jesmore, John Byrne, Curt Yun.

30. December 2016 Financial Package.

31. January 4, 2017 email to Blalock from HFV Director Karen Ross.

32. January 6, 2017 emails from Blalock to HFV Directors detailing financial performance and refinance discussions with bond holders.

33. January 19, 2017 Finance Package to HFV Directors.

34. 2016 Financial Reporting Package.

35.     February 1, 2017 Capital Funding Improvement email from Blalock to HFV Directors.

36.     February 9, 2017 Capital Funding Improvement email from Blalock to HFV Directors.

37.     February 17, 2017 Capital Funding Improvement email from Blalock to HFV Directors.

38.     February 2017 Capital Improvement Draft Budget.

39.     February 2017 Additional Funding Proposal.

40.     February 27, 2018 Email to HFV Directors regarding additional debt offering options.

41.     March 2017 "dashboard" report email transmission to HFV Directors Karen Ross, Walt Talamonti, John Byrne, Curt Yun, Linda Hiveley.

42.     March 2017 "dashboard" report.

43.     March 2017 "investor reporting package" report email transmission to HFV Directors Walt Talamonti, John Byrne, Curt Yun, Ron Jesmore.

44.     GAAP Financial Statements through February 2017.

45.     April 3, 2020 "Covid" Analysis emails.

46.     April 3, 2020 "Covid" Analysis.

47.     April 20, 2020 "Covid" Stress Test Letter to all HFV Directors.

48.     October 23, 2016 Email communications between HFV Directors and LCS regarding "financial retreat."

49.     December 21, 2016 emails between LCS and HFV Directors discussing finance package.

50.     February 2017 HFV Financial Committee Reporting Package.

51.     March 2017 HFV Financial Committee Reporting Package.

52.     April 2017 HFV Financial Benchmarks and Performance Update.

53.     May 4, 2017 email communications between LCS and HFV Board of Directors discussing three year capital budget.

54.     June 24, 2020 email exchanges between LCS and HFV Board of Directors discussing monthly cash flow, occupancy, debt service, cash reserve, financial covenants, and other related accounting observations.

55.     June 26, 2020 email exchanges between LCS and HFV Board of Directors discussing COVID effect on monthly cash flow, occupancy, debt service, cash reserve, financial covenants, and other related accounting observations.

56.     June 26, 2020 email exchanges between LCS and HFV Board of Directors discussing COVID effect on State of Michigan escrow requirements, monthly cash flow, occupancy, debt service, cash reserve, financial covenants, and other related accounting observations.

57.     July 20, 2020 email exchanges between LCS and HFV Board of Directors discussing COVID effect on State of Michigan escrow requirements, monthly cash flow, occupancy, debt service, cash reserve, financial covenants, and other related accounting observations.

58.     June 2020 Financial Reporting Package.

59.     July 29, 2020, Board Meeting Information between LCS and HFV.

**Exhibits 1-59.**

### C. Plaintiff Has Not Complied with Discovery.

Plaintiff has not produced one page of discovery. Plaintiff has given only boilerplate and imprecise objections to Defendants' discovery requests. Plaintiff's objections are therefore waived. ECF No. 61-1. The only other discovery "by" Plaintiffs is forwarding documents produced by third party witnesses, the former auditors of Debtor, Baker Tilly, and BDO USA P.C. See ECF No. 106.

Those productions *confirm* (as do Defendants' productions in **Exhibits 1-59**) Debtor's Board of Directors was *constantly* aware and apprised of Debtor's deteriorating financial condition leading up to and following the onset of the pandemic. All of that belies Plaintiff's core assertion that Defendants' "fail[ed] to appropriately disclose to the HFV Board the severe and growing financial distress of HFV." See ECF No. ECF No. 1 at p. 18 at ¶ 48(e).

It was not until after Plaintiff filed the current Motion that Plaintiff's counsel cancelled the deposition scheduled for Plaintiff, noting apparently counsel had not ever been authorized to give the very date Defendants requested, were given, and then selected. **Exhibit 60** at 1. As also noted in that email chain at p. 5 on Monday May 6, 2024 at 1:34 pm, Defendants *never* had agreed that the documents currently being requested are within Defendants' custody, possession, or control, or are owed in discovery. Defendants merely agreed to search for and produce whatever *they possessed* in that respect, on top of what has already been produced, simply to avoid a discovery dispute. *Id.* at p. 5. Defendants conveniently ignore this truth as well.

## III. Argument.

Plaintiff's Motion should be denied for the three reasons identified above: it is Plaintiff's obligation to procure them; Defendants have satisfied their discovery obligations and only offered to search for more voluntarily; and Plaintiff has failed to meet its burden for entry of an Order compelling production.

### A. Discovery Standards

Federal Rule of Civil Procedure 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

After the 2015 revisions to the Federal Rules, however, discovery must also be "proportional" to the needs of the case. Fed. R. Civ. P. 26(b)(1); *see also Helena*

*Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021). As a result, "[i]t is now the power—and *duty*—of the district courts [to] actively manage discovery and to limit discovery that exceeds its proportional and proper bounds." *Helena Agri-Enters.*, 988 F.3d at 274 (emphasis in original).

"Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37.

Rule 37(a)(1)(B) provides that a party may move to compel responses to discovery, but the party moving to compel "bears the burden of demonstrating [the] relevance" of the requested discovery. *White v. City of Cleveland*, 417 F. Supp.3d 896, 902 (N.D. Ohio Oct. 25, 2019) (quoting *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, 2019 WL 1760069, at *4 (S.D. Ohio Apr. 22, 2019)).

That the burden lies with the moving party is well-established. The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. *See Gruenbaum v. Werner Enterprises, Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note

to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

**B. There is No Statutory Obligation to Keep or Provide These Records.**

Plaintiff cites Mich. Comp. Laws Ann. § 554.949 to argue that LCS as the Debtor's former manager somehow had an obligation to have these documents. ECF No. 122 at p. 4. That's incorrect. The statute states:

Sec. 49. (1) <u>**A registered continuing care community**</u> *shall prepare and maintain* **for not less than 6 years** all of the following records:

(a) Accounts and records of each day's sales . . .

(b) Copies of contracts . . . .

Plaintiff's entire alleged statutory basis is simply untrue. The Motion should be denied for that reason, alone.

**C. These Are Plaintiffs' Statutory Documents.**

Plaintiff is standing in the shoes of the Debtor. Under Mich. Comp. Laws Ann. § 554.949, it is *Plaintiff* who should have these documents. See Doc No. 651 at 123-125 and 129-131. For this reason, too, the Motion should be denied.

**D. These Are Plaintiffs' Statutory Documents.**

Plaintiff *agreed* through the First Amended Chapter 11 Liquidating Plan of Debtor (lead case no. 20-51066, Doc No. 651 at pp. 123-125 and 129-131 of 201) at

- 14 -

§§ 4.2, 4.3, and 4.9 that the obligations of 11 U.S.C. §§ 323, 704, and 1106 are binding on him. The existence and binding nature of this "Liquidating Trust Agreement" is also of record at p. 163-193 of the plan. *Id.* at ECF No. 654 at p. 163-193 of 201. It is also at pp. 84-114 out of 121 at ECF No. 663 in the lead case.

Based on this Agreement, sections 323, 704, and 1106 of the Bankruptcy Code require Plaintiff, no one else, to obtain the "financial" and "operational" documents he now requests. It is undisputed he has them and has free access to them. He has Debtor's entire server. *See* ECF No. 61-1. It is Plaintiff's obligation to procure the Debtor's specific records he wants. That is his job. It is not Defendants' job.

Given what the Court ordered in appointing Plaintiff in the lead case, and what Plaintiff signed to obtain that appointment, Plaintiff must live up to his agreement and actually fulfill the role he has in the case. He is the "representative of the estate." 11 U.S.C. §323(a). He must investigate the affairs. *Id.* See also 11 U.S.C. §§ 704. It is his responsibility to furnish relevant information about the estate. *Id.* at §§ 323 and 704. He is the one that owes the obligations to the bankruptcy court and the parties. *Id.* at § 704(1). It is the Plaintiff, not Defendants, who agreed to collect and liquidate the property of the estate and to maximize and distribute the proceeds to creditors. *Id.* He has no right to foist his investigative duties on the very creditors to whom he owes those duties. It is his obligation to obtain and review the documents to satisfy his obligations. *Id.*

How was Plaintiff able to file this case without looking at the records? Why is Plaintiff being paid for his services if the very records he wants and apparently needs to do his job are placed and in assembled in perfect sequence for him by others? Plaintiff *agreed* to perform this work. The obligation is his. He is supposed to be paid handsomely to perform this work. He failure to do so is not somehow grounds to win a motion to compel. He has breached his duties. Regardless, his Motion should be denied accordingly.

### E. Plaintiff's Motion Is Demonstrably Untrue.

Defendants have produced millions of pages. Plaintiffs? None. **Exhibits 1-59** as described above include both "financial" and "operation" details. Plaintiff's Motion is demonstrably false. It should be denied for this reason as well.

### F. Plaintiff Should be Sanctioned.

Plaintiff is using the money that should be given to the unsecured creditors (including LCS—the largest unsecured creditor by far) on professional fees that will yield no value and will only hurt the estate. It is LCS that will be seeking costs and fees under the applicable contract, a "Management Agreement" first signed on December 1, 2010 and then restated on November 1, 2016, because Plaintiff's entire complaint is devoid of merit, and not one witness or any relevant evidence supports the claims asserted. To the contrary, the record, witnesses, and evidence all show that LCS is *owed* money, always managed the Debtor with great care, and there is

- 16 -

no suggestion of any wrongdoing *whatsoever* by any person or entity that had actual experience with, or knowledge about, the Debtor and its pre-petition existence.

### G. Defendant Never Stated It Would Have Documents and it is Who Plaintiff Owes Discovery and a Deposition.

Plaintiff is the one halting discovery after failing to carry out his Amended Plan and statutory obligations to at least gather the records he allegedly needs at his fingertips, all while they sit on the very server he possesses. **Exhibit 60** at 1. It was not until after Plaintiff filed the current Motion that Plaintiff's counsel cancelled the deposition scheduled for Plaintiff, noting that apparently counsel had not ever been authorized to offer the very deposition date Defendants accepted, and then started to prepare to use. *Id.*

As also noted in that email chain at p. 5 on Monday May 6, 2024 at 1:34 pm, Defendants *never* had agreed that the documents currently being requested are within Defendants' custody, possession, or control, or are legitimately owed in discovery. Defendants merely agreed to search for and produce whatever *they possessed* in that respect, on top of what has already been produced, simply to avoid a discovery dispute. *Id.* at p. 5. Defendants' decision to ignore these facts does not somehow substitute for discharging the burden that they fail to meet to prevail on this Motion.

- 17 -

### H. Defendants' Objections Are Valid. Plaintiff Does Not Argue Otherwise.

While it is true that, on May 9, 2023, Plaintiff served his first sets of requests for production of documents on Defendants, it is more relevant that Defendants properly responded and objected to Plaintiffs' requests on June 9, 2023. *See* ECF Nos. 56-5 through 56-8. Defendants stated detailed, applicable, and tailored objections to Plaintiff's requests. Plaintiffs' requests are vague, ambiguous, and unclear in context, and details regarding those objections were actually specified in Defendants' objections and responses.

Correspondingly, Defendants served their first discovery requests on May 10, 2023. On June 12, 2023, Plaintiff served his responses. *See,* ECF No. 60-1. But Plaintiff's responses, unlike Defendants, are boilerplate, lack specificity, and are not tailored to the questions posed, and do not provide relevant detail or context to substantiate the objections. *Id.* For a short set of examples of the differences between the discovery responses, Defendants note as follows.

### 1. Defendants' Request No. 4.

In Defendants' Request No. 4, Defendants asked for:

> 4. All documents concerning the factual basis for your allegations, claims, and damages in this lawsuit.

*Id.* at p. 22.

- 18 -

Plaintiff first responded with total boilerplate:

> **RESPONSE:** Plaintiff incorporates the Preliminary Statement, General Objections, Objections to Instructions, and Objections to Definitions, including the definition of the term "documents", as if set forth fully here. Plaintiff objects to this Request as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks "[a]ll Documents concerning the factual basis for your allegations, claims, and damages in this lawsuit" without limitation. Plaintiff also objects to this request to the extent it seeks information protected from discovery by reason of the attorney-client privilege, work product doctrine, and/or other evidentiary and/or discovery privileges.

*Id.* at 23.

This objection has no specific relation to this case whatsoever. These objections state nothing in the way of *how, why, or what* is actually objectionable. They are not narrowly tailored objections. Moreover, Request No. 4 is a critical Request that any litigant would want and need to make: provide the documents to prove your case. Instead of doing that, Plaintiff provides imprecise objections. Then, Plaintiff states that, "[s]ubject to and without waiving these objections, Plaintiff will provide to Defendants any data *already retrieved from HFV's servers and will otherwise make HFV's servers available for Defendants' inspection* at a mutually agreeable time." *Id.*

Respectfully, Defendants did not ask for servers. They asked for documents. Defendants then want to take Plaintiff's deposition as soon as possible. Rather than providing any documents, Plaintiff would have Defendants go server diving.

- 19 -

## 2. Plaintiff's Request No. 4 to LCS.

In contrast to Plaintiff's boilerplate objections, Defendants made specific objections, not one of which is analyzed by Plaintiff in its Motion. For example, In Plaintiff's document Request No. 4, Plaintiff asks for:

> 4. All Documents and Communications concerning the finances and operations of Henry Ford Village.

ECF No. 56-5.

Defendant LCS properly noted the problems with this request.

> ANSWER: LCS incorporates each general objection. LCS further objects to this request because a request "concerning" is too vague is not both relevant to any claim or defense of a party and proportional to the needs of this case. Further, the terms "finances" and "operations" are vague and ambiguous, without any reasonable definition offered, and no offer to even discuss search terms or where or how to apply them by counsel for plaintiff. Further yet, for example, "finances" could involve documents about whether to have 3 marketing salespersons or 4 during calendar year 2012. Or "operations" might involve whether to a "bingo" night on Tuesday or Wednesday in 2011. That is long, many years, before any issue within the scope of this case or the complaint, and not actually an issue in this case or even related to a potential issue in this case. "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). Subject to and without waiving any objection, LCS will reasonably allow inspection by plaintiff.

*Id.*

- 20 -

LCS made narrowly tailored objections. The term "concerning" is too vague. It is not tied to any claim or defense. The terms "finances" and "operations" are also vague and ambiguous, without any reasonable definition offered, and no offer to even discuss search terms or where or how to apply them by counsel for Plaintiff. These illustrations show the difference in the questions as posed in discovery. Defendants actually cited law in support of their objections; Plaintiff did not. And even after all of that, Defendants produced millions of documents. Plaintiff did not.

### 3. Defendants Request to Plaintiff No. 10.

In another example, Request No. 10, Defendants requested as follows:

> 10. All billing statements, invoices, requests for payments or other documents you received from Defendants at issue in this litigation and copies of all payments made to Defendant at issue in this litigation.

Obviously, in this claimed breach of fiduciary duty and preference action, these documents are relevant. Instead of providing any paper, Plaintiffs respond:

> **RESPONSE:** Plaintiff incorporates the Preliminary Statement, General Objections, Objections to Instructions, and Objections to Definitions, including the definition of the term "documents", as if set forth fully here. Plaintiff objects to this Request as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks "[a]ll billing statements, invoices, requests for payments or other documents you received from Defendants at issue in this litigation and copies of all payments made to Defendant at issue in this litigation" without limitation. Plaintiff also objects to the extent this Request seeks information already in Defendants' possession. Plaintiff also objects to this request to the extent it seeks information protected from discovery by reason of the attorney-client privilege, work product doctrine, and/or other evidentiary and/or discovery privileges. Subject to and without waiving these objections, Plaintiff will provide to

- 21 -

Defendants any data already retrieved from HFV's servers and will otherwise make HFV's servers available for Defendants' inspection at a mutually agreeable time and location in accordance with the applicable Federal Rules of Civil Procedure.

ECF No. 60-1 at p. 27.

This is the definition of boilerplate. How are bills overbroad? Unduly burdensome? Such payment documents are the entire basis of the Complaint. And then again, Plaintiff simply repeated that he will provide to Defendants any data *already retrieved from HFV's servers and will otherwise make HFV's servers available for Defendants' inspection*." *Id.*

Again, Defendants did not ask for servers. They asked for documents. And not only documents "already retrieved" from servers. Defendants did not ask for a server scavenger hunt either. Defendants want to see Plaintiff's evidence—because they do not think there is any real evidence and want to move efficiently.

### 4. Plaintiff Request to LCS No. 11.

And again in contrast to this Request No. 10 example, Plaintiff makes an extremely vague request about information in his Request No. 11 about information that is within *Debtor's* control (i.e. Plaintiff's own predecessor in interest, and in whose shoes Plaintiff stands).

11. All Documents and Communications concerning litigation relating to Henry Ford Village.

ECF No. 56-5 at p. 12.

Rather than giving boilerplate, LCS specifies in response:

> ANSWER: LCS incorporates each general objection. LCS further objects to this request because it is vague. "Concerning" litigation applies as much to a car accident, a trip and fall, employment discrimination, and the list goes on, as it does to this case. LCS also objects because this information is not more difficult to obtain by plaintiff from its own records, particularly having just complete an asset sale for HFV, than it is to obtain from LCS, and in fact plaintiff has equal and much more likely greater access to those documents than does LCS. Further yet, the request is not necessarily tied to the years in question. Further yet, plaintiff does not even attempt to reasonably define terms used or understand searching protocol or search terms. "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). Subject to and without waiving any objection, LCS will reasonably allow inspection by plaintiff.

Again, LCS is specific. First, it makes no sense for Plaintiff to request litigation information about Debtor. Plaintiff would have that better than LCS would. "Concerning" litigation is also too broad. Where would Defendants begin to search? That applies as much to a car accident, a trip and fall, employment discrimination, and the list goes on, as it does to this case. Further yet, the request is not necessarily tied to the years in question. Plaintiff does not even attempt to reasonably define terms used or understand searching protocol or search terms.

### 5. Defendants' Request to Plaintiff No. 15.

- 23 -

In this Request, Defendants obviously make a critical Request given that Plaintiff's entire case is based on Defendants allegedly financially misleading the Debtor about its financial condition.

> 15. Copies of any independent certified public accounting firm annual financial report prepared for Henry Ford Village, Inc. from December 1, 2010 to September 30, 2021.

> The Response is repeat, rote, and without any information.

> **RESPONSE:** Plaintiff incorporates the Preliminary Statement, General Objections, Objections to Instructions, and Objections to Definitions as if set forth fully here. Plaintiff further objects to the undefined term "annual financial report" as vague, ambiguous, and overly broad, and, as such, imposes on Plaintiff unclear obligations for production. Subject to and without waiving these objections, Plaintiff will provide to Defendants any data already retrieved from HFV's servers and will otherwise make HFV's servers available for Defendants' inspection at a mutually agreeable time and location in accordance with the applicable Federal Rules of Civil Procedure.

ECF No. 60-1 at p. 31.

Again, how can Debtor's own audit reports that show Debtor knew or was told of its audited financial condition prepetition be objectionable?

**I. Meet and Confer.**

Following the exchange of responses and objections, the parties did meet and confer but it was not successful. As the documents Plaintiff filed show, Defendants have fulfilled their obligations and Plaintiff has not. Defendants offered to do more out of professionalism and in favor of efficiency without a legal requirement to do so. Those meet-and-confer documents also show that Defendants did not promise

- 24 -

more than they have done, yet Defendants are still supplementing if they find more. Plaintiff rests on boilerplate objections without any specific grounds to not produce fundamental documents—ones that are conveniently inculpatory to Plaintiff's case.

### J. Plaintiff Fails to Meet His Burden.

Plaintiff's entire Motion and Brief are boilerplate law and basic propositions, though Plaintiff fails to cite the most up to date authorities regarding as Defendants have done. The fact is, Plaintiff has wholesale failed to offer *any analysis* of any specific Request or Objection to show that any Request was proper, or any Objection was improper. That is Plaintiff's burden to discharge as noted in the above-cited authorities. Plaintiff has plainly failed to meet that burden. Further, Plaintiff has actually received real information from Defendants. Plaintiff has received thousands of pages of useful data from Defendants—Plaintiffs do not actually argue otherwise.

For all these reasons, the Motion to Compel should be denied. Defendants should be awarded costs and fees for responding to this Motion. Plaintiff should be ordered to provide complete and full discovery to Defendants and Plaintiff's boilerplate objections should be overruled.

Respectfully submitted,

PLUNKETT COONEY


By: /s/ Patrick C. Lannen
Patrick C. Lannen (P73031)
David A. Lerner (P44829)
Mike Fleming (P38293)
Attorney for Defendants
38505 Woodward Ave. Suite 100
Bloomfield Hills, MI 48304
(248) 901-4027
plannen@plunkettcooney.com

Dated: June 4, 2024

Open.23940.05403.33710384-1